UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRAIG A. HERNDON, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV01446 ERW |
| | ) |
| U.S. BANCORP ASSET | ) |
| MANAGEMENT INC., et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

The matter comes before the Court on Defendants U.S. Bank National Association and U.S. Bancorp Asset Management, Inc.'s (collectively, "U.S. Bank" or "Defendants") Motion for Protective Order [doc. #27]. A hearing was held on January 23, 2007 and the Court heard arguments from the parties on the Motion.

**I.     BACKGROUND FACTS**

Plaintiffs Craig and Scott Herndon established living trusts to hold the assets acquired from the sale of their family business. In January 1997, Plaintiffs entered into an agreement with U.S. Bank, entitled "Managing Agency Agreement-Trustee (Sole Investment Discretion)," ("the Agreement") to manage the trusts.

This request for a protective order concerns a certain form, entitled "Investments Allowed by Instrument" ("the form") inadvertently produced to Plaintiffs, two years before they filed this case, in response to their request for information regarding their trust accounts. In its Motion and at the hearing on January 23, Defendants represented to the Court that the document was drafted by one of U.S. Bank's in-house trust attorneys, Mr. Elden Sternberg ("Mr. Sternberg") and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reflects Mr. Sternberg's legal review and assessment of the terms of the Agreement.[1] Defendants further state that this document is a privileged attorney-client communication between Mr. Sternberg and U.S. Bank, protected from disclosure. According to Defendants, in January 2006, it realized that it had inadvertently produced the privileged document to Plaintiffs. Defendants claim that neither U.S. Bank's internal counsel nor outside counsel were consulted regarding the production of this document and were unaware that it had been produced.

In a letter dated February 2, 2006, Defendants informed Plaintiffs' counsel of the inadvertent disclosure and requested that Plaintiffs destroy all copies of the form. Defendants' counsel also sent an email communication dated March 30, 2007, asking Plaintiffs' counsel whether he intended to return the form. Plaintiffs' counsel declined to return the form.

## II. DISCUSSION

### A. Attorney-Client Privilege

The attorney-client privilege is the oldest privilege for confidential communications known to the common law. Its purpose is to encourage, without threat of disclosure, full and frank communications between clients and their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege extends only to confidential communications made for the purpose of facilitating the rendition of legal services to the client. *In re Grand Jury Proceedings*, 791 F.2d 663, 665 (8th Cir. 1986). Confidential communications encompass information which is communicated on the understanding that it will not be revealed to third parties. *Id*.

---

[1] In February 1997, Mr. Sternberg was employed by Mercantile Bank, N.A. ("Mercantile"). Mercantile was acquired by Firstar Bank, N.A. ("Firstar") in 1999. Firstar subsequently acquired U.S. Bank, N.A., and changed its name to U.S. Bank. U.S. Bank is the successor in interest to Mercantile with respect to these agency agreements. Mr. Sternberg retired in 1998, and is no longer employed by U.S. Bank.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

An exception to the attorney-client privilege arises when the privilege is asserted by a fiduciary. This exception has been applied in the context of ERISA plan administration. When a fiduciary communicates with his attorneys about a fund he administers for the benefit of another, the attorney-client privilege does not operate to conceal from the beneficiaries information about the fund. *Geissal v. Moore Medical Group.*, 192 F.R.D. 620,624 (E.D. Mo. 2000). In other words, the attorneys are considered to be working for the fund and its beneficiaries and not for the fiduciary as administrator. *Helt v. Metropolitan Dist. Comm.*, 113 F.R.D. 7, 9 (D. Conn. 1986).

A central issue in this dispute is whether U.S. Bank was properly viewed as Plaintiffs' fiduciary for purposes of privilege and with respect to the management of Plaintiffs' trust account. Defendants argue that they acted as an agent for Plaintiffs, not as a trustee. Defendants claim that Plaintiffs were at all times directing the investment strategies for their own accounts and U.S. Bank was responsible only for implementing Plaintiffs' stated strategy. To the contrary, Plaintiffs argue that, under the Agreement, U.S. Bank had sole investment discretion with respect to Plaintiffs' assets and, therefore, owed a fiduciary duty to Plaintiffs.

Notwithstanding the label Defendants attach to the parties' relationship, the terms of the Agreement raise a question as to whether U.S. Bank owed a fiduciary duty to Plaintiffs.[2] However, the fact that U.S. Bank may have breached a fiduciary duty to Plaintiffs is an ultimate

---

[2] Section Two of the Agreement states, in pertinent part, that "the Agent shall, without the prior or subsequent approval of the Owner, invest and reinvest the assets administered by it hereunder... for such length of time and in such amounts as the Agent shall, in its sole discretion, deem it to be in the best interest of the Owner." Under the Agreement, U.S. Bank's function was to attend to the disposition and maintenance of the trust property, "in its sole discretion," so that it may be enjoyed by Plaintiffs.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

issue that is not appropriately decided in a motion for protective order. Instead, the Court will focus on Defendants' purpose in seeking legal assistance to determine whether the attorney-client privilege applies. *See Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 608-09 (N.D. Cal. 2000) (focus on the purpose for which legal advice was sought in determining whether attorney-client privilege applies).

In *Riggs National Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch.1976), the plaintiff filed a motion to compel seeking to obtain a memorandum that outlined an opinion of counsel, procured by a trustee to aid him in his duties as administrator of the trust. The defendant argued that the legal memorandum was within the attorney-client privilege because it was prepared by an attorney, based on communications with the trustee, for the purpose of securing legal assistance. The court rejected that argument holding that the defendant could not invoke the attorney-client privilege for a memorandum that was prepared for the benefit of the beneficiary and in aid of the administration of the trust. The court reasoned that:

> A beneficiary is entitled to inspect opinions of counsel procured by the trustee to guide him in the administration of the trust. The trustee has been described as a mere representative whose function is to attend to the disposition and maintenance of the trust property so that it may be enjoyed by the beneficiaries in the manner provided by the settlor. In order for the beneficiaries to hold the trustee to the proper standards of care and honesty and procure for themselves the benefits to which they are entitled, their knowledge of the affairs and mechanics of the trust management is crucial. When the beneficiaries desire to inspect opinions of counsel for which they have paid out of trust funds effectively belonging to them, the duty of the trustees to allow them to examine those opinions becomes even more compelling.

*Id*. at 712 (internal citations and quotations omitted). The court concluded the "fiduciary obligations owed by the attorney at the time he prepared the memorandum were to the beneficiaries as well as to the trustees."

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Though the Court declines, at this time, to decide whether U.S. Bank acted as a fiduciary, the Court finds the reasoning articulated in *Riggs National Bank* applicable in determining U.S. Bank's purpose in seeking legal advice related to the Agreement. U.S. Bank entered into the Agreement with Plaintiffs for the purpose of investing Plaintiffs' assets held in a managing agency account. As Plaintiffs note, the form at issue was prepared and any consultations underlying it were undertaken to assist U.S. Bank in managing the trusts' portfolios for Plaintiffs' benefit, under the terms of the Agreement. Nothing in the record indicates that U.S. Bank sought the assistance of counsel for the purpose of its own defense in litigation. This suggests to the Court that the legal assistance to U.S. Bank was rendered only in their service to Plaintiffs. The Court, therefore, believes that the form at issue was prepared ultimately for the benefit of Plaintiffs.

Furthermore, the Court finds the testimony of Tom Doherty (a portfolio manager and supervisor in U.S. Bank's Trust Department) particularly compelling; he testified that U.S. Bank's fees assessed against the trusts include charges for preparation of the form at issue. *See* Tom Doherty Dep. at 42. As the court noted in *Riggs National Bank*, "the payment to the law firm out of the trust assets is a significant factor, not only in weighing ultimately whether the beneficiaries ought to have access to the document, but also it is in itself a strong indication of precisely who the real clients are." *Id*. at 712. Accordingly, the Court finds that Plaintiffs are entitled to view documents that were prepared for their benefit and the attorney-client privilege does not apply to the form at issue.

B.  <u>Waiver of Attorney-Client Privilege</u>

Even if the document falls under the attorney client privilege, the Court believes that the privilege was waived by the inadvertent disclosure at issue here.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The parties agree that the applicable test to determine whether a waiver has occurred in this situation is set forth in *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir. 1996). This test requires the Court to examine five factors: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error." *Gray*, 86 F.3d at 1484. If, after considering these factors, the court determines that a waiver has occurred, the documents lose their privilege. *Id.* This test "accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver." *Id.*

First, the Court considers the first, second, and third *Gray* factors: (1) "the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production," (2) the number of inadvertent disclosures, and (3) the extent of the inadvertent disclosures. *Gray*, 86 F.3d at 1484. According to Plaintiffs, Defendants took no precautions to prevent disclosure of the form at issue. Plaintiffs point out that the form was provided with fewer that 175 pages of documents in mid-2003 when Plaintiffs terminated their accounts with U.S. Bank. Plaintiffs also point out that U.S. Bank did not implement any procedures to prevent the disclosure of privileged documents in the context of an account termination.

The Court agrees that Defendants have failed to show that they took reasonable precautions to prevent the inadvertent disclosure. First, Defendants have not shown that U.S. Bank employed adequate procedures to screen documents that were given to Plaintiffs upon the termination of their accounts. In its Motion, Defendants state that the document was produced

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"prior to litigation when U.S. Bank was unaware of the need for in-house or outside counsel to supervise the production of documents to Plaintiff." *See* Def.'s Mot. 8. Second, Defendants have not provided the Court with any explanation as to how the form was inadvertently disclosed. At the hearing in this matter, Defendants' counsel stated that "nobody's really quite sure" how the form was provided to Plaintiffs. Defendants' counsel acknowledges that U.S. Bank failed to keep a list or copies of the documents that were provided to Plaintiffs. Finally, nothing on the face of the form in question would likely alert counsel that it might be protected.

Thus, after considering the arguments made by the parties, the Court finds that Defendant did not take reasonable precautions to prevent the inadvertent disclosure and that these factors weigh in favor of finding waiver.

Next, the Court considers "the promptness of measures taken to rectify the disclosure." *Gray*, 86 F.3d at 1484. In evaluating promptness, at least one court has considered when the disclosing party discovered, or with reasonable diligence should have discovered, the inadvertent disclosure. *See Kan. City Power & Light Co. v. Pittsburgh & Midway Coal Mining. Co.*, 133 F.R.D. 171, 172 (D. Kan. 1989). The Court finds this rule persuasive and will apply it in the circumstances at issue in this case. According to Plaintiffs, the form at issue was quoted and referred to in Plaintiffs' complaint, filed in August 2005, and in the amended complaint, filed in December 2005. Plaintiffs, therefore, claim that Defendants should have discovered the inadvertent disclosure as early as August 2005 and did not request the form's return until February 2006. Defendants, however, contend it acted within one week of discovering the inadvertent production, on January 27, 2006.

The Court has reviewed Plaintiffs' complaint and amended complaint and finds that

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiffs quoted language in the form, but did not refer to the form by name. Therefore, Plaintiffs' complaint and amended complaint could not have put Defendants on notice of the form's disclosure. The relevant time period for the Court's consideration thus begins on January 27, 2006. Within one week of learning of the inadvertent disclosure, Defendants sought to rectify the error. This factor, therefore, weighs in favor of finding that the privilege was not waived.

Finally, the Court must consider "whether the overriding interest of justice would be served by relieving the party of its error." *Gray*, 86 F.3d at 1484. Plaintiffs claim that fairness dictates a finding of waiver because the form supports its amended complaint and has been heavily relied on throughout discovery.

The Court believes that the form does provide evidence that challenges Defendants' litigation position in this case and may be highly relevant to Plaintiffs' case. *See Draus v. Healthtrust*, Inc., 172 F.R.D. 384, 389-90 (S.D. Ind. 1997) (in evaluating the issue of fairness, waiver found where document directly contradicted several of defendant's contentions and was relevant to core issues in the case). The record also confirms that the form has been relied on extensively by Plaintiffs. Plaintiffs quoted the contents of the form in their complaint and amended complaint and used the form in the depositions of U.S. Bank's portfolio managers. Finally, in the hearing on this matter, Plaintiffs' counsel stated that his decision to accept Plaintiffs' case was based, in part, on the contents of the form. *See Bud Antle, Inc., v. Grow-Tech*, 131 F.R.D. 179, 184 (N.D. Cal. 1990) (finding waiver where defendants analyzed the document, disclosed it to experts, and indicated a strong reliance on it for purposes of their defense). Thus, the Court finds that the interests of justice weigh in favor of finding waiver.

Because the form at issue is not protected from disclosure under the attorney-client

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

privilege and because any alleged attorney-client privilege was waived by Defendants' inadvertent disclosure of the documents, Defendants' Motion for a Protective Order will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order [doc. #27] is **DENIED.**

Dated this 13th day of March, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com